UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x

KINGVISION PAY-PER-VIEW LTD.,
as Broadcast Licensee of the
May 14, 2005 WRIGHT/TRINIDAD
Program,

               Plaintiff,

   -against-

RUDDY ARNOAT, individually and
as officer, director, shareholder
and/or principal of 284 NELLY
RESTAURANT CORP. d/b/a NELLY
RESTAURANT; 284 NELLY RESTAURANT
CORP. d/b/a NELLY RESTAURANT,

              Defendants.

------------------------------------x

06 Civ. 4811 (RPP)(HBP)

REPORT AND
RECOMMENDATION



PITMAN, United States Magistrate Judge:

     TO THE HONORABLE ROBERT P. PATTERSON, United States
District Judge,

## I.   Introduction

     On September 26, 2006, the Honorable Robert P.
Patterson, United States District Judge for the Southern District
of New York, referred this matter to me to conduct an inquest
concerning plaintiff's damages as to defendants Ruddy Arnoat and
284 Nelly Restaurant Corp. (collectively, the "Defaulting
Defendants"), and to issue a report and recommendation concerning
plaintiff's damages as to the Defaulting Defendants.

MICROFILM

JUN - 7 2007

Returned to chambers for scanning on 6/7/07 KCO
Scanned by chambers on _____

On October 13, 2006, by endorsed letter, I ordered that the inquest will be resolved on the basis of written submissions alone.  Plaintiff submitted an Inquest Memorandum on October 31, 2006, detailing its conclusions of law with respect to damages and incorporating by reference factual information contained in its Memorandum of Law filed on September 15, 2006 in conjunction with its Motion for Default Judgment.  Despite having been served with copies of the original Summons and Complaint and motion for default judgment in this matter, neither of the Defaulting Defendants has made any written submissions to the Court. Accordingly, on the basis of plaintiff's written submissions alone, I recommend that the Court make the following findings of fact and conclusions of law.

II.   Findings of Fact

   A.   The Parties

      1.   The plaintiff, Kingsvision Pay-Per-View Ltd., is a Delaware Corporation with its principal place of business located at 501 Fairway Drive, Deerfield Beach, Florida 33441 (Complaint ¶ 5[1]).

---

[1]As a result of the Defaulting Defendants' default, all the allegations of the Complaint as to them, except as to the amount of damages, must be taken as true.  Bambu Sales, Inc. v. Ozak Trading Inc., 58 F.3d 849, 854 (2d Cir. 1995); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158-59

(continued...)

2.   Defendant Ruddy Arnoat, is an officer, director, shareholder and/or principal of 284 Nelly Restaurant Corp. d/b/a Nelly Restaurant, is doing business as 284 Nelly Restaurant Corp. d/b/a Nelly Restaurant, and was the individual with supervisory capacity and control over the activities occurring within the Nelly Restaurant (the "Establishment") on May 14, 2005 (Complaint ¶¶ 7, 8).

3.   Defendant 284 Nelly Restaurant Corp. d/b/a Nelly Restaurant, is a business entity, the exact nature of which is unknown, having its principal place of  business at 284 Audubon Avenue, New York, New York 10033-4218 (Complaint ¶ 10).

B.   Plaintiff's Business and
the Defaulting Defendants'
Illegal Interception of
<u>Cable Television Programming</u>

4.   By contract, plaintiff, Kingsvision Pay-Per-View Ltd., was granted the right to distribute telecasts of the Wright/Trinidad boxing match, including all undercard or preliminary bouts, on May 14, 2005 (the "Program"), via closed circuit television and encrypted satellite signal.  The Program originated via satellite uplink and was subsequently re-transmitted to

---

[1](...continued)
(2d Cir. 1992); <u>Trans World Airlines, Inc. v. Hughes</u>, 449 F.2d 51, 69-70 (2d Cir. 1971), <u>rev'd</u> <u>on</u> <u>other</u> <u>grounds</u>, 409 U.S. 363 (1973); <u>Wing v. East River Chinese Rest.</u>, 884 F. Supp. 663, 669 (E.D.N.Y. 1995); <u>Deshmukh v. Cook</u>, 630 F. Supp. 956, 959 (S.D.N.Y. 1986).

cable systems and satellite companies via satellite signal (Complaint ¶ 15).

5.   Pursuant to the contract, plaintiff entered into agreements with various entities in the State of New York, allowing them to exhibit the Program to their patrons (Complaint ¶ 16).

6.   Plaintiff charged entities who wished to exhibit the Program a fee of $12.50 per seat based on fire code occupancy and a $200.00 "DirectTV" authorization fee (Rate Card, annexed as Exhibit B to Affidavit of Donna K. Westrich, sworn to September, 13, 2006 ("Westrich Aff.")).

7.   Plaintiff expended substantial money to transmit the Program to those entities in the State of New York which had entered into agreements with plaintiff to exhibit the Program to their patrons (Complaint ¶ 17).

8.   With full knowledge that the Program was not to be received and exhibited by entities unauthorized to do so, the defendants and/or their agents, servants, workmen or employees unlawfully intercepted, received and/or de-scrambled the satellite signals by which the Program was transmitted and did exhibit the Program at the Establishment willfully and for purposes of direct or indirect commercial advantage or private financial gain (Complaint ¶ 18).

9.   The Defaulting Defendants and/or their agents, servants, workmen and employees used an illegal satellite receiver, intercepted plaintiff's signal and/or used an illegal cable converter box or device to intercept plaintiff's broadcast of the Program, which originated via satellite uplink and was then re-transmitted via satellite or microwave signal to various cable and satellite systems (Complaint ¶ 19).

10.   At the time the Program was broadcast over plaintiff's system, two investigators hired by plaintiff visited the Nelly Restaurant, located at 284 Audubon Avenue, New York, New York.   One of the investigators, Lee Packtor, visited the Establishment on May 14, 2005 (Affidavit of Lee W. Packtor, sworn to June 2, 2005 ("Packtor Aff.") at 1, annexed as Exhibit E to Affidavit of Donna K. Westrich, sworn to September 13, 2006 ("Westrich Aff.")).   Mr. Packtor was on the premises for roughly two minutes and observed approximately 24 patrons present at that time (Packtor Aff. at 1-2, annexed as Exhibit E to Westrich Aff.).   Mr. Packtor did <u>not</u>, however, observe the Program being exhibited, but, instead, observed one television set displaying a different sporting event (Packtor Aff. at 1, annexed as Exhibit E to Westrich Aff.).[2]   The other investigator, Edgardo Rodriguez, also visited the Establishment on May 14, 2005 and observed

---

[2]Plaintiff does not assert, and offers no evidence to suggest, that the sporting event observed by Mr. Packtor was an undercard bout or any other part of the Program.

approximately 30 patrons on the premises and one television set displaying the Program (Westrich Aff. ¶¶ 5, 8).[3]

11.   Apart from the information set forth in the foregoing paragraph, plaintiff has provided no evidence concerning the extent to which the Defaulting Defendants derived economic benefit from their illegal interception of the Program.

12.   The investigative cost incurred by plaintiff with respect to the Establishment was $450 (Invoice of Signal Auditing Inc., annexed as Exhibit E to Affidavit of Donna K. Westrich, sworn to September 13, 2006).

13.   Plaintiff has submitted an affidavit indicating that it incurred the following fees in prosecuting this action:

<u>Attorney Time</u>: 4.25 hrs @ $200/hr = $850.00

<u>Paralegal Time</u>: 3.25 hrs @ $75/hr = $243.75

(Affidavit of Julie C. Lonstein, Esq., sworn to September 11, 2006 ("Lonstein Aff.") ¶¶ 3-4).

---

[3]Plaintiff has provided only a hearsay account of Mr. Rodriguez' alleged visit to the Establishment during the exhibition of the Program, contained in the Affidavit of plaintiff's Vice President, Donna K. Westrich.  Although Ms. Westrich claims to attach an affidavit from Mr. Rodriguez as Exhibit E to her affidavit, neither Exhibit E to Ms. Westrich's affidavit nor any of plaintiff's other submissions contain this item.

14. In addition to the foregoing legal fees, plaintiff has also incurred a fee for the service of process totaling $200.00 (Lonstein Aff. ¶ 3).[4]

III.  Conclusions of Law

15.  This action arises under 47 U.S.C. §§ 553 and 605. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.  Venue is properly established in the Southern District of New York pursuant to 28 U.S.C. § 1391(b).

16.  The facts set forth in the affidavits submitted by plaintiff along with the uncontroverted allegations of the complaint, taken together with all the reasonable inferences that can be drawn therefrom, <u>Au Bon Pain Corp. v. Artect, Inc.</u>, 653 F.2d 61, 65 (2d Cir. 1981), demonstrate that the Defaulting Defendants have engaged in the unauthorized reception of the plaintiff's cable television programming in violation of Sections 553(a)(1) and 605(a) of the Communications Act, 47 U.S.C. §§ 553(a)(1) and 605(a).[5]

---

[4]Plaintiff also seeks to recover its filing fee of $350.00 (Lonstein Aff. ¶ 3).  The filing fee is ordinarily added to the judgment by the Judgment Clerk as a taxable cost as a matter of course.  Adding the filing fee at this stage creates an unnecessary risk that the fee will be assessed twice.

[5]Plaintiff alleged a violation 47 U.S.C. §605(e)(4) in Count II of its Complaint, but omitted this claim from its Inquest Memorandum, submitted after my October 13, 2006 Order that the inquest will be resolved on the basis of written submissions
(continued...)

17.   Sections 553(a)(1) and 605(a) of the Communications Act both prohibit the unauthorized reception of any cable television programming services which originate as satellite-delivered "radio communications." Cmty. Television Sys., Inc. v. Caruso, 284 F.3d 430, 434-35 (2d Cir. 2002); Int'l Cablevision, Inc. v. Sykes & Noel, 75 F.3d 123, 133 (2d Cir. 1996). See also Time Warner Cable of N.Y. City v. Taco Rapido Rest., 988 F. Supp. 107, 110-11 (E.D.N.Y. 1997); Cablevision Sys. Corp. v. Muneyyirci, 876 F. Supp. 415, 424-25 (E.D.N.Y. 1994). Since at least part of the Program's transmission was accomplished by satellite, the Defaulting Defendants' interception of the Program violates 47 U.S.C. §§ 553(a)(1) and 605(a). Cmty. Television Sys., Inc. v. Caruso, supra, 284 F.3d at 434-35; Int'l Cablevision, Inc. v. Sykes & Noel, supra, 75 F.3d at 131, n.4.

18.   As a party possessing "proprietary rights" in the communications which the Defaulting Defendants intercepted, plaintiff is an "aggrieved person" and thereby authorized to bring this civil action against the Defaulting Defendants pursuant to 47 U.S.C. §§ 553(c)(2) and 605(e)(3)(a). In accordance with its statutory rights under 47 U.S.C. §§ 553(c)(3)(A) and 605(e)(3)(C)(i), plaintiff has elected to recover damages against the Defaulting Defendants for their violations of 47 U.S.C. §§

───────────────────

[5](...continued)
alone.  Accordingly, I deem this claim to be abandoned.

553(a)(1) and 605(a) in the form of statutory damages, as opposed
to actual damages.  The Defaulting Defendants' default has
prevented plaintiff from discovering the financial benefits
actually derived from the Defaulting Defendants' unauthorized
reception of the Program.

      19.  Although defendant's conduct has violated both
Sections 553 and 605, plaintiff has elected to recover damages
under Section 605 only (Plaintiff's Inquest Memorandum at 2).
The range of statutory damages for a violation of section 605(a)
is $1,000.00 through $10,000.00, except in cases where the
violation occurred for direct or indirect commercial advantage or
private financial gain.  47 U.S.C. § 605(e)(3)(C)(i)(II).  Where
the violation did occur for purposes of commercial advantage or
private financial gain, "the court in its discretion, may in-
crease the award of damages, whether actual or statutory, by an
amount of not more than $100,000 for each violation . . . ." 47
U.S.C. § 605(e)(3)(C)(ii).

      20.  Plaintiff seeks $110,000 in statutory damages from
the Defaulting Defendants for the interception of the Program, on
the theory that the Defaulting Defendants intercepted the Program
illegally for commercial advantage and private financial gain.
Although I agree with plaintiff that the Defaulting Defendants
did intercept the Program for the illicit purposes cited by

plaintiff, I also believe that an award of the theoretical[6] maximum statutory damages is unwarranted here.  In determining whether to award enhanced damages under 47 U.S.C. § 605(e)(3)(C)(ii), courts consider such factors as whether there is evidence of "repeated violations over an extended period of time; substantial unlawful monetary gains; significant actual damages to plaintiff; defendant's advertising for the intended broadcast of the event; defendant's charging a cover charge or charging premiums for food and drinks." <u>Kingvision Pay-Per-View, Ltd. v. El Rey Del Bistec y Caridad, Inc.</u>, 01 Civ. 6562 (SHS), 2001 WL 1586667 at *2 (S.D.N.Y. Dec. 12, 2001); <u>see also Home Box Office v. Champs of New Haven Inc.</u>, 837 F. Supp. 480, 484 (D. Conn. 1993).  Although the Defaulting Defendants' interception of the Program was illegal, it appears from the information submitted by plaintiff that their use of the Program was limited. There is no evidence that the Nelly Restaurant imposed a cover charge or admission fee to view the Program, and, thus, it does not appear that the Defaulting Defendants tried to sell Plain-

---

[6]Plaintiff arrives at the $110,000 figures by adding the maximum amount of statutory damages recoverable under Section 605(e)(3)(C)(i)(II) to the maximum amount recoverable under Section 605 (e)(3)(C)(ii).  It is not clear whether this aggregation of statutory damages is permissible.  Plaintiff cites no authority addressing the issue and my own research has not disclosed any cases addressing the question.  Since I recommend that the amount to be awarded against the Defaulting Defendants is substantially less than $110,000, I need not resolve this issue.

tiff's intangible property.  Nor is there any evidence that the
Nelly Restaurant advertised its intended broadcast of the Pro-
gram, charged premiums for food and drinks during the display of
the Program, or received a substantial monetary gain.  There is,
however, evidence that the Defaulting Defendants are repeat
offenders -- other default judgments exist against these parties
for similar conduct.  See Kingvision Pay-Per-View Ltd. v. Arnoat,
06 Civ. 3616 (KMW)(GWG), 2007 WL 625367 (S.D.N.Y. Feb. 28, 2007)
(recommending award of damages on default judgment against Ruddy
Arnoat for violation of 47 U.S.C. §§ 553 and 605), report &
recommendation adopted by 06 Civ. 3616 (KMW) (S.D.N.Y. May 3,
2007); Garden City Boxing v. Ivan Lopez, 05 Civ. 10179 (JES)
(S.D.N.Y. Nov. 21, 2006) (granting motion for default judgment
against Ivan Lopez and 284 Nelly Restaurant Corp. for violation
of 47 U.S.C. §§ 553 and 605).  Based on these factors, I find
that the most compelling inference is that the Nelly Restaurant
illegally intercepted and displayed the Program in order to
induce customers to patronize the establishment and thereby
increase the sale of food and drink.  While some enhancement of
damages is warranted by the willfulness evinced by plaintiff's
recidivism, the theoretical statutory maximum is not appropriate
in this instance.

11

21.  As Magistrate Judge Ellis has pointed out in

Kingvision Pay-Per-View, Ltd. v. Recio, 02 Civ. 6583 (JSM)(RLE),

2003 WL 21383826 at *4 (S.D.N.Y. June 11, 2003):

> Courts have developed two approaches for determining
> statutory damages under § 605.  One approach is to
> calculate the award of damages by the number of patrons
> in the establishment at the time of the violation.  See
> Taco Rapido Restaurant, 988 F.Supp. at 111 (court
> awarded $50 per patron); Googies Luncheonette, 77 F.
> Supp.2d at 490 (court awarded $60 per patron).  Another
> approach is to award a flat sum for damages.  See
> Kingvision Pay-Per-View, Ltd., v. Jasper Grocery, 152
> F.Supp.2d 438, 442 (S.D.N.Y. 2001) (court awarded
> $5,000); 2182 La Caridad Rest., Inc., 2002 WL 654137 at
> *3 (court awarded $3,400).

See also Kingvision Pay-Per-View, Ltd. v. El Rey Bistec y

Caridad, Inc., supra, 2001 WL 1586667 at *2.  I conclude that

statutory damages should be assessed based on the number of

patrons in the Nelly Restaurant at the time the Program was

displayed.  Because plaintiff failed to provide an affidavit from

Edgardo Rodriguez attesting to his alleged observation of 30

patrons in the Establishment during the display of the Program, I

will rely instead on the affidavit of Lee Packter attesting to

his observation of 24 patrons in the Establishment at the time

that the Program was broadcast, and assume that the same number

of patrons were present at the time the Program was displayed.

Accordingly, I estimate that there were approximately 24 patrons

present in the Establishment at the time the Program was exhib-

ited.  I shall further assume that by illegally intercepting the

Program, the Default Defendant's profited by avoiding payment of

12

plaintiff's rate card fee of $12.50 for each patron present.[7]
Although these estimates and assumptions are, to some extent,
speculative, some speculation with respect to damages is permis-
sible where, as here, a defendant's default has prevented damages
from being computed with greater certainty.  Katz Communications,
Inc. v. Evening News Assoc., 705 F.2d 20, 25 (2d Cir. 1983)
(where the wrongdoer's conduct makes it impossible to ascertain
damages with certainty, the court may resort to "reasonable
conjectures and probable estimates to make the best approximation
possible" (citation and internal quotation marks omitted)).  I
further conclude that this damages computation should be enhanced
by a magnitude of three to account for the willfulness evinced by
the Default Defendant's recidivism.

---

[7]Although plaintiff's rate card fee is based on maximum fire
code occupancy, plaintiff has not provided this information for
Nelly Restaurant.  While plaintiff did provide an opinion from
its investigator that "the approximate capacity of [Nelly
Restaurant] is 20 people" (Packtor Aff. at 2), the affidavit does
not state whether this is fire code occupancy, and, if so, the
investigator's basis for making his estimate.  Accordingly, I
conclude that there is no reliable evidence in the record
concerning the maximum fire code occupancy of Nelly Restaurant,
and calculate damages instead on the basis of estimated patrons
present.  Additionally, I do not recommend an award for the $200
"DirectTV" fee detailed on plaintiff's rate card because this fee
presumably would have been payable to DirectTV, rather than
plaintiff, had the Defaulting Defendants legally purchased the
Program.

22.   Applying this methodology with respect to the Program displayed at the Establishment yields the following result.

24 patrons x $12.50/patron = $300.00

Recidivism Multiplier =         x      3
                              $900.00

23.   Given the defaults of the individual Defaulting Defendants and the consequence that all allegations against them are deemed to be true, I also conclude that they are both responsible for the interception that occurred at the Nelly Restaurant and that the individual Defaulting Defendants are, therefore, jointly and severally liable for the damages recoverable with respect to this establishment. <u>Kingvision Pay-Per-View, Ltd. v. Recio</u>, <u>supra</u>, 2003 WL 21383826 at *4.

24.   Section 605(e)(3)(B)(iii) of Title 47 requires a court to award to "an aggrieved party who prevails" the costs and reasonable attorneys' fees which it incurred in prosecuting its claims to judgment.  In the Second Circuit, however, a party seeking to recover attorney's fees must submit contemporaneous time records that show "for each attorney, the date, the hours expended and the nature of the work done." <u>N.Y. State Ass'n for Retarded Children, Inc. v. Carey</u>, 711 F.2d 1136, 1154 (2d Cir. 1983).  Transcriptions of contemporaneous time records containing the above information have been found to satisfy this require-

14

ment.  See e.g. Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1160 (2d Cir. 1994) (accepting a "typed listing of [attorneys'] hours from computer records," in lieu of contemporaneous records, where the record showed that the attorneys "made contemporaneous entries as the work was completed, and that their billing was based on these contemporaneous records"); Johnson v. Kay, 742 F. Supp. 822, 837 (S.D.N.Y. 1990) ("Where the attorneys have provided the court with affidavits that have been reconstructed from contemporaneous records and that set forth all charges with specificity, fees have not been denied."); Lenihan v. City of New York, 640 F. Supp. 822, 824 (S.D.N.Y. 1986) ("The Court routinely receives computerized transcriptions of contemporaneous time records from firms whose billing records are maintained in computers" as "a form convenient for the Court."). "Attorneys' fees applications that do not contain such supporting data[, however,] 'should normally be disallowed.'"  Cablevision Sys. N.Y. City Corp. v. Diaz, 01 Civ. 4340 (GEL) (FM), 2002 WL 31045855 at *5 (July 10, 2002), quoting N.Y. State Ass'n for Retarded Children, Inc. v. Carey, supra, 711 F.2d at 1154, and citing Kingvision Pay-Per-View v. The Body Shop, 00 Civ. 1089 (LTS), 2002 WL 393091 at *5 (S.D.N.Y. Mar. 13, 2002).

25.  Here, plaintiff has not submitted contemporaneous time records.  Instead, plaintiff's papers include an affidavit listing attorney or paralegal, date, number of hours, description

15

of work, and an hourly rate.  Plaintiff's papers provide no indication, however, that the summary of hours expended was produced based on a compilation of contemporaneous time records.  Accordingly, I respectfully recommend that plaintiff not be awarded attorneys' fees in this action.

26.  With respect to the fee for service of process, I recommend that plaintiff be awarded the sum of $200.00.

27.  Plaintiff also seeks to recover its investigative fees of $450.  An award of investigative fees is not appropriate here.  First, it is not clear that investigative costs may be awarded in this context; neither 28 U.S.C. § 1920 nor 47 U.S.C. § 605(e)(3)(B)(iii) expressly provides for the award of investigative fees and courts in this jurisdiction have declined to award investigative fees in similar circumstances.  See e.g. Garden City Boxing Club v. Mendez, 05 Civ. 10001 (RMB)(AJP), 2006 WL 1716909 at *2 (S.D.N.Y. June 16, 2006) (declining to follow magistrate judge's recommendation regarding award of investigator's fees); Kingvision Pay-Per-View Ltd. v. Cardona, 03 Civ. 3839 (GDB)(FM), 2004 WL 1490224 at *4 (S.D.N.Y. June 30, 2004) (Report & Recommendation) (denying request for recovery of investigator's fees and stating that "[t]here is no provision for a prevailing party to be awarded the cost of its investigator"); Joe Hand Promotions, Inc. v. Soto, 01 Civ. 0329 (GBD)(AJP), 2003 WL 22962810, at *2 (S.D.N.Y. Dec. 17, 2003) ("there is no author-

ity to award 'investigative fees' as costs"). Second, assuming without deciding that investigative costs may be awarded under 47 U.S.C. § 605(e)(3)(B)(iii)'s provision for "full costs," see Kingvision Pay-Per-View Ltd. v. Autar, 426 F. Supp.2d 59, 66-69 (E.D.N.Y. 2006), the evidence provided by plaintiff, an invoice from Signal Auditing, Inc. stating "Signal Piracy Observation with 2 photos and video[,] Nelly Restaurant[,] 5/14/05 Trinidad/Wright Event," the investigator's name, and the figure of $450.00, is insufficient to establish the time expended by the investigator and the reasonableness of the investigator's fees (Invoice from Signal Auditing, Inc., annexed as Exhibit E to Westrich Aff.). See Int'l Cablevision, Inc. v. Noel, 982 F. Supp. 904, 918 (W.D.N.Y. 1997) (a request for investigative fees should require a plaintiff to document "(1) the amount of time necessary for the investigation; (2) how much the investigators charged per hour; [and] (3) why the investigators are qualified to demand the requested rate."). The invoice submitted by plaintiff provides none of the required information. Accordingly, I respectfully recommended that plaintiff's request for investigative fees be denied in its entirety.

        28. Finally, plaintiff's complaint also sought an injunction (Compl. ¶¶ 37-38). Since the propriety of injunctive relief is beyond the scope of the reference, I make no recommendation concerning the propriety of injunctive relief, although I

note that such relief is ordinarily appropriate in a case such as this.

IV.  Conclusion

Accordingly, for all the foregoing reasons, I respect-fully recommend that damages be assessed against Defaulting Defendants Ruddy Arnoat and 284 Nelly Restaurant Corp., jointly and severally, in the amount of $1,100.00.

V.  Objections

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from the date of this Report and Recommendation to file written objections.  See also Fed.R.Civ.P. 6(a) and 6(e).  Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Robert P. Patterson, United States District Judge, 500 Pearl Street, Room 2550, New York, New York 10007, and to the chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007.  Any requests for an extension of time for filing objections must be directed to Judge Patterson.  FAILURE TO OBJECT WITHIN TEN (10) DAYS **WILL** RESULT IN A WAIVER OF OBJEC-TIONS AND WILL PRECLUDE APPELLATE REVIEW.  Thomas v. Arn, 474 U.S. 140 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d

18

1049, 1054 (2d Cir. 1993); <u>Frank v. Johnson</u>, 968 F.2d 298, 300

(2d Cir. 1992); <u>Wesolek v. Canadair Ltd.</u>, 838 F.2d 55, 57-59 (2d

Cir. 1988); <u>McCarthy v. Manson</u>, 714 F.2d 234, 237-38 (2d Cir.

1983).

Dated:   New York, New York
         May 30, 2007

                              Respectfully submitted,


                              _____
                              HENRY PITMAN
                              United States Magistrate Judge

Copies mailed to:

Julie Cogen Lonstein, Esq.
Lonstein Law Office, P.C.
1 Terrace hill
P.O. Box 351
Elleville, New York  12428

Ruddy Arnoat
620 West 189th Street Apt. 1B
New York, New York 10040-4223

284 Nelly Restaurant Corp.
284 Audobon Avenue
New York, New York 10033-4218

19